```
                UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLUMBIA
_____
                                    )
OSCAR WILLIAMS                      )
                                    )
            Plaintiff,              )
                                    )
       v.                           ) Civil Action No. 17-1653 (EGS)
                                    )
DISTRICT OF COLUMBIA,               )
                                    )
            Defendant.              )
                                    )
_____
```

## MEMORANDUM OPINION

Plaintiff Oscar Williams brings this action alleging defendant Metropolitan Police Department ("MPD") discriminated against him because of his sexual orientation, retaliated against him, and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code Ann. § 2-1402.21. Specifically, Mr. Williams alleges that MPD took a series of actions resulting in his eventual termination after learning about Mr. Williams' same-sex marriage. Pending before the Court is MPD's motion to dismiss the amended complaint. Upon consideration of the amended complaint, MPD's motion, the response and reply thereto, and the applicable law, the Court **GRANTS in part and DENIES in part** MPD's motion to dismiss. Specifically, the Court finds that Mr. Williams' claims based on discrimination and retaliation may

proceed, but that he has failed to adequately allege a claim based on hostile work environment.

## I. BACKGROUND

Mr. Williams is a married gay man. Am. Compl., ECF No. 11 ¶ 6. In 2016, Mr. Williams applied for a Management Supervisory Service position of Supervisor at MPD. *Id.* ¶ 7. On or about May 5, 2016, Mr. Williams was notified that he was hired for the position, and that the "background investigation unit" would contact him to begin the hiring process. *Id.* ¶¶ 8-9. Approximately two and a half months later, Mr. Williams received a call from MPD's Human Resource Specialist Marie Dawkins who notified Mr. Williams that he had successfully passed the background investigation. *Id.* ¶ 16. Ms. Dawkins extended an offer of employment to Mr. Williams, which he accepted. *Id.* ¶ 18.

In the course of that call, Mr. Williams asked Ms. Dawkins whether the salary associated with the position could be negotiated, noting that his "partner" had advised him that negotiation may be possible. *Id.* ¶¶ 19, 20. Ms. Dawkins asked what he meant by "partner," and Mr. Williams informed her that he was gay. *Id.* ¶¶ 21-22. According to Mr. Williams, the conversation "soured quickly" at that point, and Ms. Dawkins told him that salary negotiations would "definitely not happen in this situation." *Id.* ¶ 23. Mr. Williams subsequently

contacted MPD's Human Resource Department and complained to Operations Manager Lennie Moore about the exchange with Ms. Dawkins and her "offensive response." *Id.* ¶ 24.

On or about August 5, 2016, Mr. Moore contacted Mr. Williams to advise him that there was a "mishandling of paperwork," that the supervisory position he was offered was going to be reposted, and that he would need to re-apply and re-interview. *Id.* ¶¶ 27-28. Mr. Moore also informed Mr. Williams that, in the meantime, MPD would offer him a "non-competitive career service appointment" position. *Id.* ¶ 29. Mr. Williams "reluctantly" accepted the appointment until he could re-apply for the supervisory position. *Id.* ¶ 30. Mr. Williams alleges that, around the same time, another employee, Lamont Mahone, was hired for a position identical to the supervisory position for which Mr. Williams was initially hired. *Id.* ¶ 26. Mr. Williams believes that Mr. Mahone is a heterosexual man. *Id.*

On August 8, 2016, Mr. Williams met with Ms. Dawkins and Human Resource Director Kathleen Crenshaw for orientation for the non-competitive appointment position he accepted. *Id.* ¶ 31. Mr. Williams alleges that, when he inquired about benefits for his partner during an orientation session, he immediately noticed "disdain and disgust in Ms. Dawkins' body language, tone, and voice in responding." *Id.* ¶¶ 33-34. Moreover, Ms. Dawkins "avoided interaction with Mr. Williams for the rest of

3

[that] day." *Id.* ¶ 36. A few days later, Mr. Williams reported the incident to Mr. Moore. *Id.* ¶ 37. In the course of this conversation, Mr. Moore stated that Ms. Dawkins "was the person who initially mishandled [Mr. Williams'] paperwork" and that she was "not very fond" of gay men. *Id.* ¶¶ 38-40.

On September 7, 2016, after Mr. Williams had begun working in the non-competitive position, he received a call from Ms. Dawkins regarding the supervisory position for which he had initially applied. *Id.* ¶ 47. Ms. Dawkins explained that "all interviews were cancelled" and that Mr. Williams would "receive a call if they were rescheduled." *Id.* ¶ 47. Mr. Williams subsequently spoke to Mr. Moore, who reiterated that Ms. Dawkins was "not friendly" toward gay men and stated that Ms. Dawkins had "once again incorrectly handled the situation." *Id.* ¶¶ 48-50.

On September 30, 2016, Mr. Williams' immediate supervisor instructed him to report to Human Resources. *Id.* ¶ 52. Upon doing so, Mr. Williams was informed by Sergeant George Bernard that his employment with MPD was terminated. *Id.* ¶¶ 52-53. According to Sergeant Bernard, the purported reason for the termination was because Mr. Williams was "not a DC resident when he began employment and that 'maybe' the background check was unsuccessful." *Id.* ¶ 54. Notably, Mr. Williams alleges that the reasons for termination provided by Sergeant Bernard were

4

different than the ones listed in the written confirmation of his termination that he later received. *Id.* ¶¶ 57-59.

Based on these facts, Mr. William claims that MPD discriminated against him — and eventually terminated him — because of his sexual orientation. Mr. Williams's amended complaint alleges that MPD violated Title VII and the DCHRA by (1) discriminating against him on the basis of his sexual orientation, (2) retaliating against him after he complained to Human Resources, and (3) creating a hostile work environment. *See* Am. Compl., ECF No. 11 ¶¶ 63-98. MPD moved to dismiss plaintiff's amended complaint, arguing that Mr. Williams failed to allege sufficient facts to state a claim for sex discrimination, retaliation or a hostile work environment. *See* Def.'s Mem. in Supp. of Mot. to Dismiss. Am. Compl. ("Def.'s Mem."), ECF No. 13 at 7. MPD's motion is now ripe and ready for the Court's adjudication.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (internal quotation marks and citation marks omitted). "[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotation marks omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

### III. ANALYSIS

Mr. Williams alleges thee different claims under Title VII and the DCHRA based on (1) discrimination on the basis of sexual orientation, (2) retaliation; and (3) hostile work environment. Because the legal standards for establishing these claims under

6

both Title VII and the DCHRA are substantively the same, *see e.g.*, *Carpenter v. Federal Nat. Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999) (explaining that, "[i]n interpreting its Human Rights Act the District of Columbia . . . generally seems ready to accept the federal constructions of Title VII, given the substantial similarity between it and the D.C. Human Rights Act"), the Court will analyze Mr. Williams' claims under these statutes together.

To bring an actionable discrimination claim, a plaintiff must allege that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *See Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002); *Easaw v. Newport*, 253 F. Supp. 3d 22, 28 (D.D.C. 2017). A plaintiff need not plead specific facts establishing a *prima facie* case of discrimination at the motion to dismiss stage, but rather, need only allege facts that "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Consistent with this principle, "courts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss.'" *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) (citation omitted).

MPD does not dispute that Mr. Williams is a member of a protected class[1] or that he suffered an adverse employment action. Instead, the only dispute is whether Mr. Williams has sufficiently alleged facts suggesting that any adverse action he suffered was because of his sexual orientation. Specifically, MPD argues that Mr. Williams has not alleged that the individuals who made the decision to force plaintiff to reapply for his supervisory position — and who decided, eventually, to terminate plaintiff's employment — were aware of his sexual orientation. Def.'s Mem., ECF No. 13 at 11-12. MPD posits that it is "implausible" that Ms. Dawkins, the human resources specialist who purportedly is "not very fond" of gay men and allegedly behaved in a discriminatory manner, "had the authority to require Plaintiff to reapply" for the supervisory position. Def.'s Mem., ECF No. 13 at 12. MPD's arguments in this regard

---

[1] The Court notes that, while the DCHRA specifically prohibits discrimination based on sexual orientation, D.C. Code Ann. § 2-1402.21, courts are split as to whether sexual-orientation discrimination is prohibited by Title VII, *compare Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) ("Title VII does not proscribe harassment simply because of sexual orientation"), *with Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 351-52 (7th Cir. 2017) (en banc) ("a person who alleges that she experienced employment discrimination on the basis of her sexual orientation has put forth a case of sex discrimination for Title VII purposes"). The D.C. Circuit has not yet confronted this question. Because defendant "assumes that Title VII's prohibition against sex discrimination encompasses claims based on sexual orientation," *see* Def.'s Mem., ECF No. 13 at 11 n.1, the Court need not decide the issue at this time.

are unpersuasive. Questions about the scope of Ms. Dawkins' authority and the depth of the terminating officials' knowledge regarding Mr. Williams' sexual orientation raise "factual question[s]" that are "not properly resolved at the motion-to-dismiss stage when all reasonable inferences must be drawn to the plaintiff's benefit." *Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach*, 495 F.3d 695, 723 (D.C. Cir. 2007).

In any event, Mr. Williams provides considerable detail with respect to his allegations in his amended complaint, pointing to specific dates on which purportedly discriminatory interactions occurred and naming specific individuals involved. For example, Mr. Williams alleges that he was told that he passed a background check and was offered a supervisory position with the MPD. *See* Am. Compl., ECF No. 11 ¶¶ 8-18. He claims that it was only *after* he told Ms. Dawkins that he was a gay man that the conversation about his employment "soured," and he claims that it was Ms. Dawkins who "mishandled" the paperwork that led to his supervisory position being reposted. *Id.* ¶¶ 22-23, 27-28, 38. He further alleges that another individual, who was a heterosexual man, was hired for "an identical position" around the same time. *Id.* ¶ 26. These factual allegations, if true, make plaintiff's claim "'plausible on its face,' and therefore the allegations are sufficient to survive a motion to dismiss."

9

*Ryan-White v. Blank*, 922 F. Supp. 2d 19, 29 (D.D.C. 2013). Therefore, MPD's motion to dismiss Mr. Williams' discrimination claims is denied.

Likewise, Mr. Williams has sufficiently pled his retaliation claims. To state a claim for retaliation under Title VII and the DCHRA, a plaintiff must allege (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two. *Jones v. Bernanke,* 557 F.3d 670, 677 (D.C. Cir. 2009). To survive a motion to dismiss, a plaintiff need not plead all elements of his *prima facie* case. *Swierkiewicz*, 534 U.S. at 515. Instead, at "this early stage of the proceedings, [the] plaintiff can meet h[is] *prima facie* burden of causation simply by alleging that the adverse actions were caused by h[is] protected activity.'" *Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 279-80 (D.D.C. 2012) (citation omitted).

MPD does not contest that Mr. Williams was engaging in a statutorily protected activity or that he suffered a materially adverse action. *See* Def.'s Mem., ECF No. 13 at 14-15. Instead, MPD contends that Mr. Williams "fails to plausibly allege any causal link between his protected activity and [MPD's] allegedly retaliatory conduct." Def.'s Mem., ECF No. 13 at 14. According to MPD, this is because Mr. Williams has not alleged that Ms.

10

Dawkins or the terminating officials knew that Mr. Williams had engaged in a protected activity — i.e., making a complaint to Human Resources. *Id.* In addition, MPD argues that Mr. Williams has not alleged that any of the terminating officials knew about Mr. Williams' sexual orientation, and there is no "plausible allegation that Dawkins made the decision to require [Mr. Williams] to re-apply for the supervisory position or cancel his scheduled interviews." *Id.*

MPD's arguments are unavailing at the motion-to-dismiss stage. The D.C. Circuit has held that a plaintiff is **not required** to allege that a specific supervisor had knowledge of protected activity to plead a claim for retaliation. *See e.g., Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012). In *Hamilton*, the defendant argued that the plaintiff had failed to show that the supervisor who took the adverse employment action had knowledge of the plaintiff's complaint to the agency. *Id.* at 1358. In reversing the district court's decision to grant summary judgment to the defendant on the plaintiff's retaliation claim, the D.C. Circuit explained that, at the *prima facie* stage, "the fact that [the plaintiff] submitted the complaint to the agency is sufficient." *Id.*; *see also Bartlette v. Hyatt Regency*, 208 F. Supp. 2d 311, 323 (D.D.C. 2016) (defendant's argument that plaintiff's complaint was "deficient because it does not allege that the supervisors involved in the

11

discrimination complaints were the same supervisors who engaged in the retaliatory conduct" failed "because the law does not require such a showing").

So here too. In his amended complaint, Mr. Williams states that he complained multiple times to Mr. Moore, an Operations Manager in MPD's Human Resources Department, between July 2016 and September 2016. *See* Am. Compl., ECF No. 11 ¶¶ 24, 37-42, 48-51. Mr. Williams specifically alleges that, on or about September 7, 2016, he "told Mr. Moore that he believed that he was being treated differently because he was gay." *Id.* ¶ 51. Less than four weeks later, on September 30, 2016, Mr. Williams was terminated. *Id.* ¶¶ 52-53. The Court concludes that these allegations are sufficient at this stage to plead a plausible claim for retaliation. *Cf. Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 69 (D.C. Cir. 2015) ("under some circumstances, temporal proximity between an employer's knowledge of protected activity and an adverse personnel action may alone be sufficient to raise an inference of causation"). Accordingly, MPD's motion to dismiss plaintiff's retaliation claims is denied.

On the other hand, the Court concludes that Mr. Williams allegations — which are the same ones upon which his discrimination and retaliation claims are based — are insufficient to support his hostile work environment claim. To state a claim under Title VII or the DCHRA based on a hostile

work environment, a plaintiff must allege facts establishing that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). He must therefore establish that "(1) he . . . is a member of a protected class; (2) he . . . was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 189 (D.D.C. 2012). In evaluating these factors, the "court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). This standard is a demanding one, as Title VII is not intended to function as a "general civility code" that regulates the "ordinary tribulations of the workplace, such as the sporadic use of

13

abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Here, Mr. Williams claims that MPD created a hostile work environment by "denying him the opportunity to negotiate for his pay; mishandling his paperwork; requiring him to re-apply for the position he was hired for; terminating any interviews he had for that position; and subsequently terminating his employment." Am. Compl., ECF No. 11 ¶ 71. These allegations consist of discrete instances of alleged discrimination or retaliation — indeed, Mr. Williams relies on these very same allegations to form the basis of his other claims. "[A]s a general matter, courts in this Circuit frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim" and are "reluctant to transform mere reference to alleged disparate acts of discrimination against plaintiff into a hostile work environment claim." *Dudley v. Wash. Metro. Area Transit Authority*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013) (citations and internal quotation marks omitted). Moreover, even in instances in which courts have permitted a plaintiff to rely on "discrete acts that the plaintiff claims . . . . are actionable on their own," those facts must be "sufficient to show that those decisions were part of a **severe and pervasive pattern of harassment**." *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 92 (D.D.C. 2014) (emphasis added).

Here, Mr. Williams simply does not allege the type of "intimidation, ridicule, and insult" that is sufficiently "severe and pervasive" to state a hostile work environment claim. Therefore, MPD's motion to dismiss plaintiff's hostile work environment claim is granted.

## IV. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the defendant's motion to dismiss plaintiff's amended complaint is **GRANTED in part and DENIED in part**. A separate Order accompanies this Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**June 30, 2018**